**Edwin G. KLEINBERG, Petitioner,**

v.

**RAILROAD RETIREMENT BOARD, Respondent.**

No. 93–2427.

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 11, 1994.

Decided March 17, 1994.

Rehearing Denied May 9, 1994.

Counsel who presented argument on behalf of appellant was Rodney H. Powell, Des Moines, IA.

Counsel who presented argument on behalf of appellee was Arthur A. Arfa of the R.R. Retirement Bd., Chicago, IL. Catherine C. Cook of the R.R. Retirement Bd., Chicago, IL, appeared on the brief.

Before BEAM and MORRIS SHEPPARD ARNOLD, Circuit Judges; and WELLFORD *, Senior Circuit Judge.

WELLFORD, Senior Circuit Judge.

Edwin G. Kleinberg, petitioner, seeks in this appeal to reverse the decision of the respondent Railroad Retirement Board ("the Board") and to obtain disability annuity benefits. Kleinberg filed an application for benefits under certain provisions of the Railroad

Retirement Act, 45 U.S.C. § 231a(a)(1)(iv) and (v). His application was denied by the hearing officer and by the Board.

■ In an appeal of this type, petitioner must show that the Board's decision denying his claim was not supported by substantial evidence, or that the Board committed an error of law. *See Soger v. Railroad Retirement Board,* 974 F.2d 90 (8th Cir.1992), and *Robinett v. Railroad Retirement Board,* 929 F.2d 1343 (8th Cir.1991). We conclude that the petitioner has failed to demonstrate either of these deficiencies in the Board's decision.

■ For the reasons stated below, we believe the record contains substantial evidence to support the Board's decision to deny the petitioner's claim for disability annuity benefits. The January 27, 1986 application at issue described the following medical condition: "black outs sometimes—had slight stroke—unconfirmed about 3 yr. ago. Stomach problem—bleeding internally—has emphysema & knee problems." He explained his work circumstances: "laid off most of the time," and claimed that he could no longer work after August 1, 1987, "the last day I was able to work on the railroad." He conceded, however, in his application that he had not been "treated or tested by any hospital institution or clinic (in-patient or out-patient)." He listed treatment by his personal physician, Dr. Lohr, for the flu "that I currently have," and claimed a treatment or examination by a Dr. Jung in December of 1987, who, he maintained, had advised that he "can't work."

The only medication listed was for an "antibiotic for flu." He also claimed in this application for disability benefits under the Act that his knee, stomach, and chest problems made it "hard" to walk, eat, bathe, and dress but he could attend to other bodily needs. He listed indoor activity as "just answers the phone," but suggested he had "slurred speech." He listed no earnings during 1987 (and 1988). Kleinberg did not respond to the question whether he had been

* THE HONORABLE HARRY W. WELLFORD, Senior United States Circuit Judge for the Sixth Circuit, sitting by designation.

self-employed during the last 12 months, or whether he received worker's compensation payments. He added that he "last worked for the railroad in August, '87 but then continued to work for the family corporation until sometime in Nov. '87 but [he] had no earnings." Petitioner was born in 1931.[1]

After reviewing a number of medical records of Dr. Lohr, Dr. Jung and several other doctors, the director of retirement claims, operating under the aegis of the respondent, denied the application finding "no mental or physical condition that prevents performance of *any* regular and substantial work." The director found that Kleinberg's health impairments were "not considered severe enough to prevent all work activity." Upon further consideration, at Kleinberg's request, the director of retirement claims observed that petitioner's "employment with K and K Shuttle, Inc. from November, 1983 to November, 1987 broke [his] current connection" with the railroad industry as explained in a letter to the United Transportation Union, and also that he "should be able to perform work." In addition, Kleinberg had previously owned a truck wash and Kleinberg Trucking, a "family corporation," in the 1970's, and a janitor service "family corporation" in the 1960's.[2]

In his appeal to the Board from this ruling, Kleinberg argued that he was unable to work and that his work for K & K Shuttle did not break his current connection with the railroad industry. Kleinberg explained that his wife started K & K Shuttle, Inc. in 1983 while he was an employee of the B.N. Railroad as a brakeman and dispatcher. He admitted being laid off or furloughed by the railroad over the years since but added that he had also been called back from time to time. He conceded that while laid off he "did

help out with the business," but that no one told him that he "could not work another job while [he] was layed [sic] off." He described his "employment" at K & K Shuttle as follows:

> Answer the telephone and call drivers. My wife has the corporation and I work for her but am not paid a salary. Her net income is about 30–40,000/year. K & K Shuttle, Inc, RR 1, Box 256, Dohata City, NE 68731. This corporation is run from our home.

He also claimed the job involved sitting eight hours a day, and that he used "technical knowledge and skills."

The record also reflects that Kleinberg had been Secretary–Treasurer of K & K Shuttle, but in 1987 "resigning that position," having his son appointed, with his wife remaining President. The record contains 1986 tax returns of the Kleinbergs, prepared by an accounting firm, which reflect *two dependent children* who lived with them, wages and salaries of $43,507 plus unemployment compensation of $4,375. The return also claimed a deduction of $556 "for married couple when both work." The Kleinbergs claimed rental income from their home and garage (apparently from the family corporation) of $5,900. Social security earnings of Kleinberg reflected $7,561 in 1986 and $17,291 in 1987 for Kleinberg, plus "self-employment" earnings of $1,293 in 1986 and $6,998 in 1987.[3]

Kleinberg also testified that he worked about forty hours a week for the family business, K & K Shuttle, Inc., until late 1987. He further testified that due to his ill health and becoming sick while working one day for the railroad in August of 1987, he "just didn't feel like working anymore." Finally, Klein-

---

**1.** We note that he may be entitled to social security benefits in 1993. Kleinberg's wife testified that his work for the family corporation "was getting something into his Social Security account at least ... to build up Social Security." She conceded that payments to him were wages.

**2.** Kleinberg testified that he had "various businesses that were [his] own." Since 1975, his work for family businesses, principally dispatching, had "been really what I done [sic]" rather than railroad work.

**3.** Despite the overwhelming evidence of Kleinberg's employment at K & K Shuttle, Kleinberg was less than truthful in his application for benefits. Kleinberg failed to report non-railroad earnings of approximately $24,000 in 1987, and that he had received unemployment compensation in 1986, plus considerable earnings from the family corporation in which he served as a principal officer. He admitted that he worked for that family corporation and he reported, for *income tax* purposes, his earnings as wages/salaries.

berg filed for the disability benefits because he "couldn't pass the physical on the railroad." Based on the above evidence, the Board held that Kleinberg's activities and considerable earnings from the family corporation in 1986 and 1987 broke his current connection with the railroad. Concluding that the record before the Board contained substantial evidence to support the denial of Kleinberg's claim for disability annuity benefits, we turn our attention to whether the Board committed an error of law. *See Soger,* 974 F.2d at 92; *Robinett,* 929 F.2d at 1345.

■ We first consider whether Kleinberg met the statutory requirement for retirement annuity claimants to have a *current connection* with the railroad industry.[4] A "current connection" is defined in the statute:

An individual shall be deemed to have a "current connection with the railroad industry" at the time an annuity begins to accrue to him and at death if, in any thirty consecutive calendar months before the month in which an annuity under this Act begins to accrue to him or the month in which he dies if that first occurs, he will have been in service as an employee in not less than twelve calendar months and if such thirty calendar months do not immediately precede such month, he will not have been engaged in any regular employment other than employment for an employer with the Department of Transportation, the Interstate Commerce Commission, the National Mediation Board, the National Transportation Safety Board, the State-owned railroad (as defined in the Alaska Railroad Transfer Act of 1982), so long as it is an instrumentality of the State of Alaska, or the Railroad Retirement Board in the period before such month and after the end of such thirty months.

45 U.S.C. § 231(*o*) (1986); *see also* 20 C.F.R. § 216.17 (1993) (describing what amount of regular non-railroad employment will break a current connection).

Under the meaning of the statute, an employee has a current connection with the railroad industry only if he does not engage in regular non-railroad employment between the end of the last thirty-months period in which such employee has twelve months of creditable railroad service and the claimed annuity beginning date. While certainly not a model of legislative clarity, the statutory provisions relating to current connection apply in this case based upon Kleinberg's earnings and work activity with K & K Shuttle, Inc.[5]

Kleinberg's claimed annuity benefits, were he qualified to receive them, would begin February 1, 1988, at the earliest.[6] He worked eight months in creditable railroad service in 1984, one month in 1985, and one month of creditable service in August, 1987 (although he actually worked only one day). The years 1986 and 1987 were within the end of the thirty month period and his earliest eligible annuity beginning date. Petitioner worked in a non-railroad job at least two

---

4. Section 231a(a)(1)(iv) of the Railroad Retirement Act provides that

The following-described individuals, if they shall have completed ten years of service and shall have filed an application for annuities, shall, subject to the conditions set forth in subsection (c), (f), and (h) of this section, be entitled to annuities....

. . . .

(iv) *individuals who have a current connection with the railroad industry, whose permanent physical or mental condition is such as to be disabling for work in their regular occupation,* and who (A) have completed twenty years of service or (B) have attained the age of sixty. 45 U.S.C. § 231a(a)(1)(iv) (1986) (emphasis added).

5. The hearing officer described the standard as follows:

Section 216.97 of the Board's Regulations states that, "An employee has a current con-

nection with the railroad industry if he or she worked in creditable railroad service in at least 12 of the 30 consecutive months immediately before ... the month his or her annuity begins or (if earlier) the month he or she dies."

Alternatively, the test for a current connection is met if "The employee works in creditable railroad service in at least 12 months in a period of 30 consecutive months and *does not work in any regular non-railroad employment in the interval* between the month the 30–month period ends and the earlier of: (1) The month his or her annuity begins, or (2) The month he or she dies."

(emphasis added).

6. February 1, 1988, is the first day of the sixth month after his claimed disability. *See* 45 U.S.C. § 231d(a)(ii) (1986).

consecutive years within a thirty month period and he earned well over $1,000 in wages in each of several years within that interval. Specifically, Kleinberg was engaged in regular dispatching employment for wages for at least four years with his family business, K & K Shuttle, Inc., which operated from his home almost to the time his application for benefits was filed. His regular 1986 and 1987 non-railroad employment thus broke Kleinberg's current connection. *See* 20 C.F.R. § 216.16(a).

In response, Kleinberg claimed that his employment and earnings were "self-employment" and thus excluded from being considered regular non-railroad employment. 20 C.F.R. § 216.16(b)(1) (1993).[7] He claimed that "the payment of 'wages' was the only way [he] would take his profits out of the family corporation." Petitioner's Brief at 8. This simply is not so, whether these wages were as he further claimed, "transferred [from the corporation] into Mr. & Mrs. Kleinberg's joint checking account." *Id.* Furthermore, we find *Howatt v. Folsom*, 253 F.2d 680 (3d Cir.1958), relied upon by the petitioner, to be distinguishable. *Howatt* was a social security case and the Secretary found that Howatt was really her son's employee and not a corporate employee. In *Howatt*, the appellate court found substantial evidence to support this finding concerning an individual, not a corporate, employer.

As previously observed, Kleinberg, a corporate officer, planned and carried out an arrangement to fund his future social security benefits by taking wages from the corporation in 1985, 1986 and 1987. Kleinberg claimed and reported his earnings as wages. He cannot now be heard to contend they are something else. The Board did not commit error in concluding that Kleinberg's current connection with his former railroad employment was broken and that he was not entitled to the claimed benefits. His earnings were not due to self-employment by his own design.

We find it unnecessary to discuss the remaining basis of the Board's decision that Kleinberg was capable of performing some regular and substantial work.

We **AFFIRM** the Board's decision, accordingly.

---

**7.** Section 216.16(b)(1) provides that: "(b) Regular non-railroad employment does not include any of the following: (1) self-employment...." 20 C.F.R. § 216.16(b)(1) (1993).